**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0001n.06
Filed: January 6, 2009

No. 03-3928

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHRISTOPHER PICKERING,

      **Petitioner,**

v.

MICHAEL MUKASEY,[*] ATTORNEY
GENERAL,

      **Respondent.**

On Appeal from the Board
of Immigration Appeals

_____

**Before: DAUGHTREY and GILMAN, Circuit Judges; and RICE,[**] Senior District Judge.**

**PER CURIAM.**

After this court had granted the Petition for Review filed by Petitioner Christopher

Pickering ("Petitioner" or "Pickering") and reversed the decision of the Board of Immigration

Appeals ("BIA"), which would have led to his removal from the United States (*Pickering v.*

---

[*]When this court entered its decision on the merits of this appeal, Alberto Gonzalez was the Attorney General of the United States. The court has substituted his successor, Michael Mukasey, in accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

[**]The Honorable Walter H. Rice, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

No. 03-3928
*Pickering v. Mukasey*

*Gonzales*, 465 F.3d 263 (6th Cir. 2006)), Pickering filed a Petition for an Award of

Attorney's Fees and Costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

§ 2412.[1]  As a means of analysis, we initially examine his request for an award of

attorney's fees, before turning to the question of costs.

## I.  Attorney's Fees

In pertinent part, the EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  As can be seen, this court cannot award the requested

attorney's fees if it finds that the position of the government was substantially justified.  The

government bears the burden of demonstrating that its position was substantially justified.

*E.W. Grobbel Sons, Inc. v. National Labor Relations Board*, 176 F.3d 875, 878 (6th Cir.

1999).  The government's "position" comprehends both its underlying action and its

litigation position.  See 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(D); *Delta Engineering v. United

States*, 41 F.3d 259, 261 (6th Cir. 1994).  "The fact that we found that the Commissioner's

position was unsupported by substantial evidence does not foreclose the possibility that

---

[1]Pickering also relies upon 5 U.S.C. § 504 to support his request for an award of attorney's fees.  Section 504 is inapplicable, since it permits an administrative agency to award attorney's fees incurred by a prevailing, private party in an administrative adjudication, under the same circumstances as the EAJA.

-2-

the position was substantially justified." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court said that "substantially justified" means "justified in substance or in the main–that is, justified to a degree that could satisfy a reasonable person." *Id*. at 565 (internal quotation marks omitted). The *Pierce* Court explained further that the government's position would be "substantially justified" if it had a "reasonable basis in both law and fact." *Id*. (internal quotation marks omitted). For reasons that follow, this Court finds that the government's position had a reasonable basis in both law and fact and that, therefore, it was substantially justified.

In 1980, Petitioner entered a guilty plea to and was convicted of the charge of unlawful possession of LSD in the Province of Ontario, Canada. In March, 1991, he was admitted to the United States as an intra-company transferee for a temporary period not to exceed two years. Without authority, he remained in the United States for more than two years. In May, 1997, Pickering appealed his conviction for illegal possession of LSD, seeking to have that conviction quashed, invoking Section 24(1) of the Canadian Charter of Rights and Freedoms and stating in his accompanying affidavit that his conviction was a bar to his permanent residence in the United States. About six weeks later, the Canadian court entered a judgment order, quashing that conviction.

In October, 1998, removal proceedings were initiated against the Petitioner, based upon his 1980 conviction for unlawful possession of LSD.[2] An Immigration Judge ("IJ") found Pickering to be removable because of that conviction. In his

---

[2]On August 21, 1998, Petitioner's request to have his immigration status adjusted was denied, leading to the initiation of removal proceedings against him.

-3-

decision, the IJ declined to give effect to the order of the Canadian court quashing

Pickering's conviction, finding that the court had issued its order solely for rehabilitative

purposes, to allow Pickering to live permanently in the United States. Petitioner

appealed the decision of the IJ to the BIA, which dismissed the appeal in a published

decision. *Matter of Pickering*, 23 I & N Dec. 621 (BIA 2003). Like the IJ, the BIA

concluded that the Canadian court had entered the order quashing Pickering's

conviction for immigration purposes, rather than because of a defect in the conviction

or in the underlying proceedings. *Id*. That conclusion was based upon the following

reasoning:

> The resolution of this case therefore turns on whether the conviction was quashed on the basis of a defect in the underlying criminal proceedings. In making this determination, we look to the law under which the Canadian court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction.
>
> The order quashing the conviction in this case does not reference the law pursuant to which the conviction was vacated. Although [Pickering] noted in his affidavit that he sought the relief pursuant to Section 24(1) of the Canadian Charter of Rights and Freedoms and has argued that the purpose of this section is to provide appropriate and just remedies for violation of Charter rights, we are unable to discern such a purpose from the official documentation submitted in support of the claim.
>
> Turning to the wording of the order and the respondent's request for post-conviction relief, we note that the judgment only refers, as the grounds for ordering the conviction quashed, to [Pickering's] request and his supporting affidavit. Significantly, neither document identifies a basis to question the integrity of the underlying criminal proceeding or conviction. The affidavit alleges that the respondent's controlled substance conviction is a bar to his permanent residence in the United States and indicates that the sole purpose for the order is to eliminate that bar. Under these circumstances, we find that the quashing of the conviction was not based on a defect in the conviction or in the proceedings underlying the conviction, but instead appears to have been entered solely for immigration purposes. For these reasons, we agree with the Immigration Judge that the respondent has a "conviction" for possession of a controlled substance within the

meaning of section 101(a)(48)(A) of the Act.  Accordingly, [Pickering's] appeal will be dismissed.

*Id.* (footnotes omitted).

As indicated, this court reversed the decision of the BIA. *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006).  We agreed with the BIA that a conviction can be considered for immigration purposes when it has been vacated solely for reasons of rehabilitation or immigration hardships, as opposed to being vacated as a result of a substantive or procedural defect in the underlying criminal conviction.  *Id.* at 266.  This court concluded, however, that the government had failed to prove with clear and convincing evidence that the Canadian court quashed the Petitioner's conviction solely for reasons of rehabilitation or immigration hardships.  *Id.* at 267-69.  In particular, this court's rested its conclusion upon evidence establishing that Section 24(1) of the Canadian Charter of Rights and Freedoms could serve as a vehicle for quashing his conviction only if the Canadian court had concluded that Pickering's rights under that Charter had been violated.  *Id. at 268.* Thus, we noted that the Charter "allows a remedy only for procedural or substantive defects in the underlying conviction."  *Id.* at 269.

Because this court concluded that the BIA had adopted the correct legal standards in *Pickering* (465 F.3d at 266), the agency's denial of relief to Petitioner had a reasonable basis in law.  The rationale set forth by the BIA in its decision dismissing the Petitioner's appeal also convinces us that the agency's decision had a reasonable basis in fact, even though it was not supported by substantial evidence.  In the notice of appeal he filed in the Canadian court, Pickering mentioned the Canadian Charter of Rights and Freedoms; however, he did not explain in either his notice of appeal or in his accompanying affidavit

how his rights secured by that Charter had been violated when he entered his guilty plea to unlawful possession of LSD some 17 years earlier. In his affidavit, he merely stated that the conviction prevented him from becoming a permanent resident of the United States. In its decision quashing Pickering's conviction, the Canadian court referred to the documents he had filed to obtain that relief. Although the Petitioner had cited the Charter in his notice of appeal, that court, like Pickering, did not suggest which of the rights bestowed upon him by that Charter had been violated by his 17-year-old conviction.

Since this court has concluded that the government's position had a reasonable basis in law and fact, it necessarily finds that the position of the government was substantially justified. *Pearce*, 487 U.S. at 565. Accordingly, the court concludes that Petitioner is not entitled to an award of attorney's fees under the EAJA.

## II. Costs

Petitioner requests that this court award him costs in the sum of $1,113.90, That sum is comprised of $100.00 for the filing fee, $135.00 for Federal Express fees, $585.40 and $293.50 for travel expenses for oral argument. Rule 39(d)(2) of the Federal Rules of Appellate Procedure provides that "[a] party who wants costs taxed must–within 14 days after entry of judgment–file with the circuit clerk, with proof of service, an itemized and verified bill of costs." (emphasis added). Herein, since Pickering filed his request for

attorney's fees and costs three months after this court had entered judgment, he failed to comply with Rule 39(d)(2).  Therefore, Petitioner is not entitled to an award of costs.[3]

### III.  Conclusion

Accordingly, this court denies Pickering's Petition for an Award of Attorney's Fees and Costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

---

[3]In support of his request for costs, Pickering cites 42 U.S.C. § 2412(a)(1), which provides that a private party who prevails against the Government in a civil action is entitled to recover the same costs he would be entitled to recover from another private party. Section 2412(a)(1) is not a separate procedural mechanism by which the prevailing party in an appeal may recover costs.  Rather, that statutory provision merely satisfies the requirement set forth in Rule 39(b) that there be statutory authorization before an appellate court awards costs against the United States, its agency or officer.